**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Fisher Tool Company, Inc.; Yu
Feng Industrial Company, Ltd., a
Taiwanese corporation,
          *Plaintiffs-Appellants,*

          v.

Gillet Outillage, a French
corporation,
                    *Defendant,*

          and

Mayhew Steel Products, Inc., a
Massachusetts corporation;
Matthews Collins Shepherd and
McKay, a New Jersey partnership,
          *Defendants-Appellees.*

No. 06-55996

D.C. No.
CV-04-07550-ABC

FISHER TOOL COMPANY, INC.; YU
FENG INDUSTRIAL COMPANY, LTD., a
Taiwanese corporation,
            *Plaintiffs-Appellants,*

                v.

GILLET OUTILLAGE, a French
corporation,
            *Defendant-Appellee,*

               and

MAYHEW STEEL PRODUCTS, INC., a
Massachusetts corporation;
MATTHEWS COLLINS SHEPHERD AND
MCKAY, a New Jersey partnership,
            *Defendants.*

No. 06-56165

D.C. No.
CV-04-07550-ABC

OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
February 4, 2008—Pasadena, California

Filed June 30, 2008

Before: Alex Kozinski, Chief Judge,
Diarmuid F. O'Scannlain and William A. Fletcher,
Circuit Judges.

Opinion by Chief Judge Kozinski

**COUNSEL**

Louis S. Mastriani, Michael G. McManus, Rodney R. Sweet-
land, III and David F. Nickel, Adduci, Mastriani & Schaum-
berg, L.L.P., Washington, DC, for the plaintiffs-appellants.

Maryam Shokrai, Wayne W. Call and Melinda Evans, Call, Jensen & Ferrell, Newport Beach, California, for defendant-appellee Gillet Outillage.

Daniel F. Lula and Daniel L. Rasmussen, Payne & Fears LLP, Irvine, California, for defendant-appellee Mathews, Collins, Shepherd & McKay, P.A.

Michael J. Coyne and Benjamin M. Coyle, Bacon & Wilson, P.C., Springfield, Massachusetts and Joseph F. Coyne, Jr., Sheppard, Mullin, Richter & Hampton LLP, Los Angeles, California, for defendant-appellee Mayhew Steel Products, Inc.

---

**OPINION**

KOZINSKI, Chief Judge:

Defendant Gillet Outillage is a French company that makes hose clamp pliers; it owns French and U.S. patents on the pliers' design. When Gillet discovered that plaintiffs were selling similar pliers in the United States, the company sued them for patent infringement. But the lawsuit didn't go as well as Gillet hoped: The district court construed the patent's claims narrowly at a pre-trial *Markman* hearing; after that setback Gillet dropped the suit, which was then dismissed. Plaintiffs thereupon sued Gillet and its lawyers, claiming that Gillet's lawsuit was a malicious prosecution under California law and a violation of the federal antitrust laws. Plaintiffs also claim that the company's public allegations of patent infringement violated section 43(a) of the Lanham Act and various California tort laws. The district court granted summary judgment to defendants, and plaintiffs appeal.

**1. Malicious prosecution**

**[1] a.** The district court granted summary judgment to Gillet on plaintiffs' malicious prosecution claim because Gil-

let relied on the advice of its lawyers, defendant Mathews, Collins, Shepherd & McKay, P.A. *See DeRosa* v. *Transamerica Title Ins. Co.*, 213 Cal. App. 3d 1390, 1397 (1989) (no malicious prosecution where defendants show "that they have in good faith consulted a lawyer, have stated all the facts to him, have been advised by the lawyer that they have a good cause of action and have honestly acted upon the advice of the lawyer"). Plaintiffs concede that Gillet consulted with Mathews, and don't dispute that Mathews advised the company that it had a good cause of action for patent infringement; the only question is whether Gillet acted in good faith and provided Mathews with any facts in the company's possession that it "knew or should have known would defeat" the lawsuit. *Bertero* v. *Nat'l Gen. Corp.*, 529 P.2d 608, 616 (Cal. 1975); *see also* 5 Witkin, Summary of California Law § 482 (2005) ("The defendant must have disclosed all *pertinent and material* facts within his . . . knowledge.").

David Loft, Gillet's executive, declared that he "engaged Mathews . . . to determine whether [plaintiffs'] Pliers infringed the Gillet Patent, and if so, . . . to commence a patent infringement action." Loft Decl. ¶ 6. To conduct an infringement analysis, Mathews needed two things: Gillet's patent and a pair of plaintiffs' pliers. Loft says he provided Mathews with accurate information as to both. *See id.* ("I provided to [Mathews] all facts relating to the Gillet Pliers that I deemed material."). Plaintiffs don't offer any evidence to the contrary.

**[2]** Instead, plaintiffs argue that Gillet's patent is invalid and/or unenforceable. But even assuming that's true—it was never established in the infringement lawsuit or in any other proceeding—plaintiffs don't have any evidence that Gillet was on notice of the problem.

**[3]** Plaintiffs claim that Gillet knew of a "mistranslation" in its patent. *See* 35 U.S.C. § 375(b) (courts won't enforce claims that are expanded by a mistranslation). But even

assuming that there *is* mistranslation,[1] there's no evidence that Gillet or its lawyers knew or should have known about it. The mistranslation certainly isn't clear on its face, since French-to-English dictionaries support it. *E.g.*, 1 J.E. Mansion, Harrap's New Standard French and English Dictionary (D.M. Ledesert & R.P.L. Ledesert eds., rev. ed. 1974) (defining "cliquet" as "catch, pawl . . . ratchet"). And Gillet's application for a U.K. patent uses a similar translation,[2] so the U.K. patent application couldn't have put Gillet on notice of the alleged problem with its U.S. patent.

[4] Plaintiffs allege that Gillet knew various other facts that put it on notice that its patent was invalid or unenforceable, but these facts are even less probative of invalidity and unenforceability than the alleged mistranslation; even if Gillet was aware of these additional facts, the company could reasonably have concluded that they were neither "pertinent" nor "material" and therefore didn't have to be disclosed to its lawyers. *See* Witkin, *supra*.[3]

---

[1]The purported mistranslation is this: The patent claims a device for fastening together the pliers' handles using what would, in English, be termed a latch. One end of the latch is fixed to one handle by a hinge; at the latch's end is a hook that catches on a post on the other handle, thereby locking the two handles together. In the French patent, the latch is called a "mécanisme à cliquet;" in the U.S. patent, it is termed a "ratchet mechanism."

[2]The U.K. patent application, which was also based on the French patent, translates the term "mécanisme à cliquet" as "pawl mechanism." This is very similar to the U.S. translation of "ratchet mechanism." A pawl is a hinged catch that engages with a notched wheel in such a way that the wheel can only move in one direction. *See* Webster's New International Dictionary (2d ed. 1939). There's a pawl at work inside most ratchets, *see id.*, so someone comparing the U.K. patent application with the U.S. patent could easily conclude that they claim precisely the same thing.

[3]First, plaintiffs claim that Gillet knew it had "withheld" prior art from the Patent and Trademark Office during the patent prosecution "in order to deceive the PTO." But plaintiffs don't point to any relevant prior art. Plaintiffs point out that a different pair of pliers in Gillet's catalog appears to use a similar latch, but plaintiffs offer no argument as to why this prior

**[5] b.**　The district court granted summary judgment to Gillet's law firm, Mathews, on a different theory: Plaintiffs haven't shown that Mathews lacked probable cause to bring the suit. *See Sheldon Appel Co.* v. *Albert & Oliker*, 765 P.2d 498, 501 (Cal. 1989). To prove a lack of probable cause, plaintiffs must show that the lawsuit was "so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable." *Wilson* v. *Parker, Covert & Chidester*, 50 P.3d 733, 741 (Cal. 2002).

**[6]** The district court was right: Mathews had abundant probable cause to think that plaintiffs' pliers infringed the Gillet patent. Two of the firm's lawyers performed independent infringement analyses; the firm obtained a third infringement analysis from an outside patent lawyer; all three concluded that plaintiffs' pliers infringed Gillet's patent. Plaintiffs haven't come forward with any evidence that these infringement analyses fell below professional standards or were done in bad faith. Of course the district court ultimately construed Gillet's patent more narrowly than the lawyers predicted, but that doesn't prove that the lawyers' analyses were "completely lacking in apparent merit." *Id.* Quite the contrary, the district judge who ruled against Gillet at the pre-trial *Markman* hearing later said the company's arguments of patent infringement were "strong."[4] We agree with the district court

---

art was relevant to the subsequent patent application. Second, Gillet's executive, Loft, told the lawyers that "a guy wrote" to Gillet, claiming that he "invented the same thing and here are my drawings." But there's no evidence that these drawings in fact look anything like Gillet's pliers, so there's no proof that Gillet was on notice that this "guy" anticipated the company's patent. Finally, plaintiffs quibble that the patent didn't name the true inventor. But such an error can be fixed by amending the patent, 35 U.S.C. § 256; *see Pannu* v. *Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998), so even if there was a misstatement, it could not have defeated Gillet's infringement lawsuit.

[4]The district judge in the present case also presided over the underlying infringement litigation.

that "more than ample probable cause supported Mathews's decision to file the underlying lawsuit."

[7] Plaintiffs contend that Mathews should have investigated the patent's validity and enforceability before filing suit; if Mathews had done so, plaintiffs insist, the firm would have discovered the mistranslation that, in plaintiffs' view, renders the patent invalid or unenforceable. *See* pp. 7834-35 *supra*. But even if Mathews had been negligent in failing to investigate the patent's validity and enforceability, that negligence would be "[i]rrelevan[t]" to the question of whether the lawyers had probable cause to sue. *Sheldon Appel*, 765 P.2d at 509. Mathews could reasonably conclude, based on the facts available to it, that Gillet's infringement case was "tenable." *Wilson*, 50 P.3d at 741.

## 2. Lanham Act and California tort law

At Gillet's direction, Mathews prepared letters, addressed "To Whom It May Concern," expressing Mathews's "strong opinion" that plaintiffs' pliers infringed Gillet's patent and threatening that Gillet would sue anyone who sold plaintiffs' pliers. Defendant Mayhew Steel Products, Inc., Gillet's U.S. distributor, forwarded these letters to its customers.[5] Plaintiffs claim that the letters falsely stated that their pliers infringed Gillet's patent, and therefore violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and various California tort laws.

[8] But the Federal Circuit has held that where Lanham Act claims and state tort claims are based on a defendant's representation that someone infringed his patent, plaintiff must show that defendant's representation was made in bad faith. *Zenith Elecs. Corp.* v. *Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed.

---

[5]Mayhews doesn't dispute that forwarding the letter on Gillet's behalf was a statement for purposes of the Lanham Act, so we don't consider the issue.

Cir. 1999) (Lanham Act claims); *Hunter Douglas, Inc.* v. *Harmonic Design, Inc.*, 153 F.3d 1318, 1335-37 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus. Inc.* v. *Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999) (state tort claims). We adopt these holdings. *See Zila, Inc.* v. *Tinnell*, 502 F.3d 1014, 1022 (9th Cir. 2007) (because of the "particularly strong national uniformity concerns" in patent law, we are especially "hesit[ant]" to open up conflicts with other circuits in this area).

**[9]** In *Zenith* and *Hunter Douglas*, the defendants owned the patents at issue or were the exclusive licensee; here, by contrast, plaintiffs are suing not only the patent-holder (Gillet) but also that company's U.S. distributor (Mayhew) and its law firm (Mathews). Plaintiffs argue that *Zenith* and *Hunter Douglas* apply only to patent-holders, so that plaintiffs don't have to show that Mayhew and Mathews acted in bad faith. But plaintiffs offer no good reason why the bad-faith requirement should apply only to the patent-holder and not also to those who act in concert with him to enforce his patent rights. The purpose of the bad-faith requirement is to permit the patent-holder to assert his rights (in good faith) without fear that he might thereby violate the Lanham Act or state tort laws. *See Zenith*, 182 F.3d at 1353. And, to assert his patent rights, a patent-holder will often need help. Here, for instance, Gillet relied on its lawyers to draft the letters; it relied on its U.S. distributor to forward those letters to retailers. Because Mayhew and Mathews acted in concert with Gillet, the patent-holder, to recover against them plaintiffs must show that they acted in bad faith.[6]

**[10]** Plaintiffs haven't presented any evidence that defendants drafted or forwarded the letters in bad faith. Plaintiffs

---

[6]We do not consider whether plaintiffs would have to show bad faith in order to bring a Lanham Act or state tort claim against a third party who stated that a product infringed another's patent but who did not do so in concert with the patent-holder.

argue that we should infer bad faith because defendants never intended to carry out the letters' promise to sue everyone who sold plaintiffs' pliers, but even if that were true, it wouldn't be "particularly probative of bad faith." *Golan* v. *Pingel Enter. Inc.*, 310 F.3d 1360, 1372 n.5 (Fed. Cir. 2002).

## 3. Antitrust

**[11]** Plaintiffs' antitrust claims are barred by the *Noerr-Pennington* doctrine because plaintiffs haven't come forward with evidence that defendants' lawsuit was "objectively baseless," *Prof'l Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993), or that Gillet's patent was procured through knowing and willful fraud, *Q-Pharma, Inc.* v. *Andrew Jergens Co.*, 360 F.3d 1295, 1304-05 (Fed. Cir. 2004).

**AFFIRMED.**