MAYER, Circuit Judge,
dissenting-in-part.
The court errs when it says that no deference is owed to a district court’s finding that the infringement claims asserted by a litigant at trial were objectively unreasonable. See Ante at 1309 (‘We review the [district] court’s determination of objective reasonableness without deference since it is a question of law.”). When reviewing an exceptional case determination under 35 U.S.C. § 285, reasonableness is a finding of fact which may be set aside only for clear error. See Eon-Net LP v. Flagstar Bancorp, 653 F.3d 1314, 1324 (Fed.Cir.2011) (“When reviewing an exceptional case finding for clear error, we are mindful that the district court has lived with the case and the lawyers for an extended period. Having only the briefs and the cold record, and with counsel appearing before us for only a short period of time, we are not in the position to second-guess the trial court’s judgment.”). Applying this highly deferential standard of review, there is no basis for overturning the trial court’s determination that the infringement counterclaims brought by All-care Health Management Systems, Inc. (“Allcare”) against Highmark, Inc. (“High-mark”) were frivolous. I would affirm the district court’s award of attorney fees and expenses in its entirety.
I.
Congress created this court in 1982 with the goal of promoting greater uniformity in the interpretation and application of the nation’s patent laws. See Markman v. Westview Instruments, Inc., 517 U.S. 370, *1320 390, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (“Congress created the Court of Appeals for the Federal Circuit as an exclusive appellate court for patent cases, observing that increased uniformity would strengthen the United States patent system in such a way as to foster technological growth and industrial innovation.” (citations and internal quotation marks omitted)). The fact that we have been vested with exclusive appellate jurisdiction in patent cases does not, however, grant us license to invade the fact-finding province of the trial courts. Our increasing infatuation with de novo review of factual determinations began with claim construction, see Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1455-56 (Fed.Cir.1998) (en banc), and has now infected review of both willful infringement, see Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 682 F.3d 1003, 1004-06 (Fed.Cir.2012), and section 285 exceptional case determinations. As a result of this appellate overreaching, litigation before the district court has become a mere dress rehearsal for the command performance here. See Phillips v. AWH Corp., 415 F.3d 1303, 1334 (Fed.Cir.2005) (en banc) (Mayer J., dissenting) (“If we persist in deciding the subsidiary factual components of claim construction without deference, there is no reason why litigants should be required to parade their evidence before the district courts or for district courts to waste time and resources evaluating such evidence.”). Encouraging relitigation of factual disputes on appeal is an enormous waste of the litigants’ resources and vitiates the critically important fact-finding role of the district courts. See Anderson v. City of Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (“[T]he parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much.”).
Absent misconduct during litigation or when securing a patent, sanctions under section 285 may be awarded only if a two-prong test is satisfied: (1) the litigation is brought in subjective bad faith; and (2) it is objectively baseless. Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 543 (Fed.Cir.2011). The objective baselessness standard under section 285 “is identical to the objective recklessness standard for enhanced damages” in the willful infringement context. iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed.Cir. 2011). Until Bard, 682 F.3d at 1004-06, this court had correctly applied a highly deferential “clear error” standard of review to the factual underpinnings of an exceptional case determination. See Nilssen v. Osram Sylvania, Inc., 528 F.3d 1352, 1357 (Fed.Cir.2008) (“We review a finding that a case is ‘exceptional’ within the meaning of 35 U.S.C. § 285 for clear error.”); Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1299 (Fed.Cir. 2004) (“We review a denial of attorney fees under 35 U.S.C. § 285 for an abuse of discretion; however, we review the factual determination whether a case is exceptional under § 285 for clear error.”); Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1328 (Fed.Cir.2003) (emphasizing that this court reviews a trial “court’s factual findings, including whether the case is exceptional, for clear error”); Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1378 (Fed.Cir.2001) (“Whether a case is ‘exceptional,’ in accordance with 35 U.S.C. § 285, is a question of fact.”). Bard, however, rejected this approach, concluding that whether a litigant’s conduct was objectively reasonable is a question of law subject to de novo review. See 682 F.3d at 1004-06. Because Bard usurps *1321 the fact-finding role of the trial courts and is plainly inconsistent with our precedent it is an outlier and of no precedential value. We are bound to follow the standard of review articulated in earlier decisions. See Johnston v. IVAC Corp., 885 F.2d 1574, 1579 (Fed.Cir.1989) (“Where conflicting statements ... appear in our precedent, the panel is obligated to review the cases and reconcile or explain the statements, if possible. If not reconcilable and if not merely conflicting dicta, the panel is obligated to follow the earlier case law which is the binding precedent.”). The law of this circuit can only be superseded by the court en banc. See Sacco v. Dep’t of Justice, 317 F.3d 1384, 1386 (Fed.Cir.2003).
Bard is simply wrong when it concludes that a determination of whether conduct is objectively reasonable is a question of law subject to de novo review. See 682 F.3d at 1006-07. To the contrary, the question of what constitutes reasonable conduct under varying circumstances is a quintessentially factual inquiry. Indeed, the Supreme Court has acknowledged that reasonableness is a question of fact by recognizing “the jury’s unique competence in applying the ‘reasonable man’ standard.” TSC Indus. v. Northway, Inc., 426 U.S. 438, 450 n. 12, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). This court, too, has recognized that the reasonableness of a litigant’s conduct is a factual question. See Nat’l Presto Indus., Inc. v. W. Bend Co., 76 F.3d 1185, 1193 (Fed.Cir.1996) (“Whether the infringer had a reasonable belief that the accused activity did not violate the law is a question of fact, as are other questions relevant to the issue of willfulness.” (citations omitted)); see also Rand v. Underwriters at Lloyd’s, 295 F.2d 342, 346 (2nd Cir.1961) (emphasizing that “when dissimilar inferences may be drawn from undisputed facts, or when the facts are in dispute, ‘reasonableness’ is a jury question”). As an appellate court, we are ill-suited to weigh the evidence required to make an exceptional case determination. In many cases, a trial court will declare a case exceptional only after spending months — and sometimes even years — reviewing the evidence, hearing testimony, and evaluating the conduct of the litigants. Its intimate familiarity with the facts of the case, and the parties involved, place it in a far superior position to judge whether or not a litigant’s claims of infringement were objectively baseless:
The district judge is a firsthand observer of the proceedings below. His is the view from the trenches: he sees the shots fired by one party against the other, and he has full knowledge of the circumstances prompting the crossfire .... Since the imposition of sanctions will usually require [an] intensive inquiry into the factual circumstances surrounding an alleged violation, the trial judge is in the best position to review [those] circumstances and render an informed judgment.
Kale v. Combined Ins. Co., 861 F.2d 746, 758 (1st Cir.1988) (citations and internal quotation marks omitted).
Bard’s assertion that objective reasonableness is a question of law is anomalous given that the exceptional nature of the case must be established by clear and convincing evidence. See Wedgetail, Ltd. v. Huddleston Deluxe, Inc., 576 F.3d 1302, 1304 (Fed.Cir.2009). The clear and convincing evidence standard applies to questions of fact, not to questions of law. See, e.g., Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed.Cir. 2008) (“The predicate facts must be proven by clear and convincing evidence.” (citations and internal quotation marks omitted)). Furthermore, the Bard approach is *1322 unnecessarily complex[1] and will undoubtedly spawn unneeded litigation over which issues in a section 285 determination are issues of fact, which are issues of law, and which are mixed questions of law and fact. See Cooter & Cell v. Hartmarx Corp., 496 U.S. 384, 401, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (explaining that there is no “rule or principle that will unerringly distinguish a factual finding from a legal conclusion,” and that “[m]aking such distinctions is particularly difficult” in the context of attorney fee awards (citations and internal quotation marks omitted)).
Although the Supreme Court has not yet spoken on the appropriate standard of review applicable to section 285 exceptional case determinations, it has made clear that a highly deferential standard of review applies in analogous proceedings brought under Rule 11 of the Federal Rules of Civil Procedure. See Cooter, 496 U.S. at 399-405, 110 S.Ct. 2447. Prior to Cooter, some circuit courts of appeals had divided review of Rule 11 sanctions into three separate analyses, reviewing fact-findings under a clearly erroneous standard, legal questions under a de novo standard, and the actual sanction decision for abuse of discretion. Id. at 399, 110 S.Ct. 2447. The Supreme Court rejected this approach, concluding that although Rule 11 determinations involve both factual and legal issues, all aspects of such a determination must be reviewed under a highly deferential abuse of discretion standard. Id. at 405, 110 S.Ct. 2447. In the Court’s view, application of a deferential standard was appropriate because “the district court [was] better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11.” Id. at 402, 110 S.Ct. 2447. Significantly, the Court rejected the view that a determination as to whether a litigant’s conduct was reasonable must be reviewed by an appellate court de novo. Id. at 405, 110 S.Ct. 2447 (“An appellate court’s review of whether a legal position was reasonable or plausible enough under the circumstances is unlikely to establish clear guidelines for lower courts; nor will it clarify the underlying principles of law.” (citations and internal quotation marks omitted)). Similarly, in the context of fee awards under the Equal Access to Justice Act (“EAJA”), 28 U.S.C. § 2412(d), the Supreme Court has determined that a deferential abuse of discretion standard applies, even though an EAJA award turns on the question of whether the government’s litigation position had a “reasonable basis both in law and fact.” Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).
Bard offers no persuasive explanation as to why the highly deferential standard of review adopted in Cooter and Pierce should not apply to section 285 exceptional case determinations. Simply because the section 285 analysis can touch on issues of patent validity and infringement does not mean that this court can shirk our obligation to afford due deference to the better-informed judgment of the trial court on factual matters. See Pullman-Standard *1323 v. Swint, 456 U.S. 273, 287, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (Rule 52(a) of the Federal Rules of Civil Procedure “does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court’s findings unless clearly erroneous.”).
II.
Here, the trial court, in a thorough and well-reasoned opinion, concluded that All-care engaged in “vexatious and, at times, deceitful conduct” and “maintained infringement claims well after such claims had been shown by its own experts to be without merit.” Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 706 F.Supp.2d 713, 737 (N.D.Tex.2010). The court found that Allcare failed to conduct any sort of reasonable pre-filing investigation before asserting its infringement counterclaims against Highmark. Id. at 723-27. Robert Shelton, Allcare’s vice-president, ignored persuasive, publically-available evidence[2] which clearly demonstrated that High-mark’s accused system failed to meet key elements of claim 52(c) of U.S. Patent No. 5,301,105 (the “'105 patent”). Claim 52(c) specifically requires “entering ... data symbolic of patient symptoms for tentatively identifying a proposed mode of treatment.” '105 patent col. 21 11. 31-34 (emphasis added). In Highmark’s accused system, however, a physician or other medical professional enters both the symptoms and the proposed diagnosis and treatment options. Thus, symptom data is not entered “for” the purpose of “identifying a proposed mode of treatment” as required by claim 52(c). Indeed, Allcare’s own expert acknowledged that in the Highmark system symptom data was entered to identify the condition for which the patient was already receiving treatment and not “for” the purpose of identifying the proposed mode of treatment. See Joint App’x 11586-88; Highmark, 706 F.Supp.2d at 731 (“Allcare’s allegations were shown to be without support by its own expert’s report and deposition testimony. Yet Allcare persisted in its infringement allegations.”). Given that All-care persisted in advancing infringement allegations that were both in direct conflict with the plain claim language and unsupported by the testimony of its own expert, the district court had ample grounds for concluding that Allcare’s allegations of infringement of claim 52(c) were frivolous.[3] Because there was no clear error in the trial court’s exceptional case determination, its section 285 award must be affirmed.
III.
Finally, it is worth noting that the infringement trial in this case occurred prior *1324 to the Supreme Court’s decisions in Bilski v. Kappos, — U.S. -, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010), and Mayo Collaborative Servs. v. Prometheus Labs., Inc., — U.S. -, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012). Had the trial court had the benefit of these decisions, it could have applied 35 U.S.C. § 101 to invalidate All-care’s 105 patent at the summary judgment stage of the proceedings. See Bilski, 130 S.Ct. at 3225 (noting that whether claims are directed to statutory subject matter is a “threshold test”).
“[T]he patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time.” Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 63, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). A patentee does not uphold his end of this “bargain” if he seeks broad monopoly rights over a basic concept, fundamental principle, or natural law without a concomitant contribution to the existing body of scientific and technological knowledge. In Bilski, an application was rejected as patent ineligible because it did not “add” anything to the basic concept of hedging against economic risk. 130 S.Ct. at 3231 (emphasizing that the application applied the concept of hedging using “well-known random analysis techniques”). In Mayo, likewise, process claims were invalidated under section 101 because they simply described a law of nature and applied it using “well-understood, routine, [and] conventional” means. 132 S.Ct. at 1294.
A similar analysis applies here. All-care’s claimed diagnostic system falls outside the ambit of section 101 because it is directed to the “abstract idea” that particular symptoms are likely caused by particular diseases or conditions. The '105 patent describes a system in which a user enters data regarding a patient’s symptoms and a computer generates a list of possible diseases or conditions that might be causing such symptoms. Any healthcare provider or patient who has ever consulted a medical treatise or home medical reference book to determine what disease or condition might be causing particular symptoms has practiced a non-computerized version of the claimed method. Because the '105 patent simply describes the abstract idea that certain symptoms are correlated with certain diseases and then applies that idea using conventional computer technology, it fails to meet section 101’s subject matter eligibility requirements. See MySpace, Inc. v. Graphon Corp., 672 F.3d 1250, 1267 (Fed.Cir.2012) (Mayer, J., dissenting) (“While running a particular process on a computer undeniably improves efficiency and accuracy, cloaking an otherwise abstract idea in the guise of a computer-implemented claim is insufficient to bring it within section 101.” (footnote omitted)); see also Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1333 (Fed. Cir.2012) (concluding that claims drawn to a “computer-aided” method of processing information through a clearinghouse fell outside the ambit of section 101); CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1375 (Fed.Cir.2011) (emphasizing “that the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium”). Where, as here, a patent describes an abstract idea, but discloses no new technology or “ ‘inventive concept,’ ” Mayo, 132 S.Ct. at 1294, for applying that idea, a robust application of section 101 at the summary judgment stage will save both courts and litigants years of needless litigation.

. As a practical matter, the Bard approach will be difficult and time-consuming to apply. Bard instructs:
In considering the objective prong of [In re Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir.2007) (en banc) ], the judge may when the defense is a question of fact or a mixed question of law and fact allow the jury to determine the underlying facts relevant to the defense in the first instance, for example, the questions of anticipation or obviousness. But ... the ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law by the judge.
Bard, 682 F.3d at 1008.

. "[B]y all accounts a large amount of information regarding Highmark’s system was available publicly. Allcare even discovered a demonstration version of Highmark’s system complete with a representative user interface. This interface displayed what code was used by Highmark’s system ... and what the code was used for (to indicate symptoms rather than to determine a proposed treatment).” Highmark, 706 F.Supp.2d at 725 (citations omitted). Had Allcare conducted an even minimal investigation of publically available information regarding the Highmark system, it would have discovered that that system did not meet claim 52(c)’s requirement that symptom data is entered "for” the purpose of "identifying a proposed mode of treatment.” '105 patent col. 21 11. 31-34.

. The court errs when it concludes that an embodiment disclosed in the specification provided reasonable support for Allcare's allegation that the Highmark system met the limitations of claim 52(c). That embodiment plainly did not describe a system in which the physician enters symptoms “for” the purposes of identifying a method of treatment, see '150 patent col. 10 11. 5-8, and was therefore not covered by claim 52(c).