NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GROOVE DIGITAL, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED BANK,**
*Defendant-Appellee*

---

2019-1857

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:18-cv-00966-LO-TCB, Judge Liam O'Grady.

---

Decided:  September 3, 2020

---

BRIAN SHERWOOD SEAL, Butzel Long, PC, Washington, DC, for plaintiff-appellant.  Also represented by MITCHELL ZAJAC, Detroit, MI.

JEFFREY A. BERKOWITZ, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Reston, VA, for defendant-appellee.  Also represented by KEVIN D. RODKEY, Atlanta, GA; UMBER AGGARWAL, J. MICHAEL JAKES, Washington, DC.

---

Before CHEN, SCHALL, and HUGHES, *Circuit Judges*.

SCHALL, *Circuit Judge*.

This is an appeal from a final judgment of the United States District Court for the Eastern District of Virginia in a patent infringement case. Groove Digital, Inc. ("Groove Digital") sued United Bank in the district court for infringement of claims 1–37 of U.S. Patent No. 9,454,762 ("the '762 patent"). The court held a Markman hearing on April 16, 2019, during which it indicated it would issue a claim construction order that would rely upon the explanations provided in the parties' briefing. J.A. 860. In due course, the court issued an order construing various claim terms. Order, *Groove Digital, Inc. v. United Bank*, 1:18-cv-00966, Dkt. 94, 2019 WL 1869853, at *1 (E.D. Va. Apr. 24, 2019) ("*Claim Construction Order*").

The parties subsequently filed a joint stipulation stating that, given the court's constructions of certain claim terms in the court's *Claim Construction Order*, Groove Digital could not prove infringement of the '762 patent by United Bank. Stipulation and Proposed Summary Judgment, 1:18-cv-00966, Dkt. 96 (E.D. Va. May 2, 2019); J.A. 862–65. In view of the parties' stipulation, the district court granted summary judgment of non-infringement of claims 1–37 of the '762 patent to United Bank. Groove Digital timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

For the reasons stated below, we hold the district court's claim constructions were not erroneous. We therefore *affirm* the court's grant of summary judgment of non-infringement as to claims 1–37 of the '762 patent and the resulting judgment in favor of United Bank.

## BACKGROUND

### I.

The '762 patent discloses a method for delivering targeted content, such as advertisements, by serving an "applet (also known as an alert or notification)" to an end user's device over a network. '762 patent col. 1 ll. 13–16, col. 2 ll. 55–60, col. 5 ll. 16–18.

Independent claim 1 is representative of all 37 claims of the '762 patent. It recites:

1. A system for delivering information to a networked device of a user, the system comprising:

a microprocessor running a software application for delivering an applet application to the networked device and managing the delivery of the applet application to the networked device, wherein the applet application passively deploys one or more applets at a time of deployment,

wherein the applet application provides for delivery of content to the networked device and a display of the content in a predetermined portion of a user display that is less than an entire display of the networked device, by the one or more applets, wherein the one or more applet is configured to deploy at least one of independent of or in conjunction with an internet browser window, wherein an internet browser is configured to deploy subsequent to deployment of the one or more applets based on at least one action or inaction of the user, wherein at least one of the applets is configured to become idle upon deployment of the internet browser, and wherein the deployment of the one or more applets is such that at the time of deployment of the one or more applets the user can continue to operate the networked device in a state prior to the deployment of the one or more applets;

> a first database coupled to the microprocessor and storing a first set of information relating to the user; and
>
> a second database coupled to the microprocessor and including a second set of information for comparison to the first set of information,
>
> wherein the microprocessor compares the first set of information to the second set of information to determine whether the content should be transmitted to the networked device for display by the one or more applets.

*Id.* at col. 14 ll. 9–43.

## II.

In the *Claim Construction Order*, the court construed the term "applet," which appears in each of the '762 patent's independent claims—claims 1, 14, 25, 36, and 37—to mean:

> [A] program installed by a user onto the user's device that is served based on a geotargeted specification, provides at least one browser link to a specific web page, is capable of displaying content from a party other than the party supplying the applet application, and excludes email, fax, text messages, telephone calls, mail notifications, and popups.

2019 WL 1869853, at *2. The court construed four "comparing" phrases appearing in the claims[1] to similarly require geotargeting.

---

[1]   The "comparing" phrases recite:

(1) "wherein the microprocessor compares the first set of information to the second set of information to determine whether the content

The court construed the term "internet browser," which also appears in each of the '762 patent's independent claims, to mean "a program that enables [a] user to find, locate, retrieve, and navigate any web pages on the internet." *Id.*

## DISCUSSION

### I.

Claim construction is ultimately an issue of law that we review de novo. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325–26 (2015). We review the district court's underlying factual findings for clear error. *Id.* at 325–33. However, "when the district court reviews only evidence intrinsic to the patent (the patent claims and specifications,

---

should be transmitted to the networked device for display by the one or more applets" (claims 1 and 36);
(2) "comparing the first set of information to a second set of information relating to parameters for transmission of the content to the networked device" (claim 14);
(3) "computer readable program code used to compare the first set of information to a second set of information relating to parameters for transmission of the content to the networked device" (claim 25); and
(4) "wherein the content is based on a comparison of a plurality of data sets via the microprocessor, and wherein the microprocessor based on the comparison determines whether the content should be transmitted to the networked device for display by the one or more applets" (claim 37).

*Claim Construction Order*, 2019 WL 1869853, at *2.

along with the patent's prosecution history), the judge's determination will amount solely to a determination of law," which we review de novo. *Id.* at 331.

Claim terms are generally given their ordinary and customary meaning as understood by persons of ordinary skill in the art in view of the specification and prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  Where, however, the inventor has clearly set forth a different definition of a claim term, or has manifested that the invention does or does not include a particular aspect, that intention "is regarded as dispositive." *Id.* at 1316 (citations omitted).

## II.

### A.

Groove Digital's first argument is that the district court erred when it construed the "applet" term and the "comparing" phrases to require "geotargeting."  Groove Digital objects to the *Claim Construction Order*'s lack of reasoning in support of its construction.  Groove contends that, to the extent the court relied upon United Bank's claim construction arguments that the terms require geotargeting, those arguments impermissibly incorporate features of embodiments disclosed in the specification into the claim construction.  Appellant's Br. 16–20 (citing col. 1 ll. 13–16; col. 3 ll. 25–36; col. 5 l. 65–col. 6 l. 3; col. 7 ll. 36–43; col. 9 ll. 6–13, 17–21, 39–55; col. 10, ll. 40–42; col. 11 ll. 7–11, 17–35 and 45–50).  According to Groove Digital, at most, these specification references describe specific embodiments that may use geotargeting "as an option," but they do not characterize the invention as a whole and thus do not support a requirement of geotargeting in all instances.  *Id.* at 18–19.  In support of its position, Groove Digital directs us to our decision in *Ancora Technologies, Inc. v. Apple, Inc.*, 744 F.3d 732, 735 (Fed. Cir. 2014), where we held non-limiting examples set forth in the specification to be "not sufficient to redefine [a claim] term" to include a

feature provided in the examples.  In addition, Groove Digital asserts that the '762 patent, at col. 6, ll. 38–62 and Fig. 2, describes an embodiment that does not require geotargeting.  Appellant's Br. 20.[2]

United Bank responds that "[g]eotargeting is the primary objective of the patented system and method," and asserts that each of the embodiments discussing applet delivery described in the '762 patent requires geotargeting.[3] Appellee's Br. at 3, 14–15.  United Bank contends that the district court properly construed the corresponding claim terms.[4]

---

[2]    Groove Digital also notes that the Patent Trial and Appeal Board ("Board") declined to require geotargeting in its construction of these claim terms in proceedings for inter partes review of the '762 patent.  Appellant's Br. 16 (citing J.A. 874 n.3); Appellant's Notices of Supp. Authority under Fed. Cir. R. 28(i), No. 19-1857, Dkt. Nos. 57 (May 6, 2020) & 58 (May 29, 2020).

[3]    According to United Bank, the embodiment Groove Digital points to as not requiring geotargeting does not pertain to how applets are targeted for delivery, but rather addresses how a user may select an applet after it is deployed.  Appellee's Br. 35–36.

[4]    United Bank responds to Groove Digital's reference to the Board's claim construction in the inter partes review proceedings by pointing out that the Board construed claim terms under the broadest reasonable interpretation standard, not the *Phillips* standard applied by the district court.  Appellee's Response to Groove Digital's Notices of Supp. Authority under Fed. Cir. R. 28(i), No. 19-1857, Dkt. No. 59 (June 1, 2020) (citing 37 C.F.R. § 42.100(b) (2018); *Cuozzo Speed Techs. LLC v. Lee,* 136 S. Ct. 2131, 2144–46 (2016)).

B.

We agree with United Bank that the district court's claim construction was proper.

An explicit definition is not required to inform a claim term's meaning. Rather, a patent's specification "may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents." *In re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1148–50 (Fed. Cir. 2012) (quoting *Irdeto Access, Inc. v. Echostar Satellite Corp.,* 383 F.3d 1295, 1300 (Fed. Cir. 2004)). We have held that a patent's repeated and consistent description of a claim term may inform its construction. In *Abbott*, we held a construction of "electrochemical sensor" that encompassed sensors with external cables or wires to be in error because the patents at issue "repeatedly, consistently, and exclusively depict[ed] an electrochemical sensor without external cables or wires while simultaneously disparaging sensors with external cables or wires." *Id.* at 1150 (internal quotation marks and citation omitted); *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1321 (Fed. Cir. 2011) ("We agree . . . that the disputed claim terms are limited to information that originates from a hard copy document. The written description repeatedly and consistently defines the invention as a system that processes information derived from hard copy documents.").

Similarly, in *Profectus Technology LLC v. Huawei Technologies Co.*, 823 F.3d 1375, 1380–81 (Fed. Cir. 2016), we upheld the district court's construction of the term "mountable" to require "having a feature for mounting" where every disclosed embodiment in the patent specification included a "mounting" feature and plaintiff was unable to identify any disclosure that "contemplate[d] a situation where *no* mounting features exist." *See also Poly-America, L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016) (concluding that the district court's construction of

the claim term "short seal" to require inward extension did not improperly import a limitation from the specification where "[e]very embodiment described in the specification has inwardly extended short seals and every section of the specification indicates the importance of inwardly extended short seals.").

Here, like in *Abbott*, the '762 patent "repeatedly, consistently, and exclusively" depicts applets as being geotargeted. As an example, the Field of the Invention describes the "present invention" as "delivering and serving *local* content and advertisements." '762 patent col. 1 ll. 13–16 (emphasis added). Importantly, the patent explains:

> For any [advertising] campaign to work effectively, the system must be able to target the offer to the right audience. . . . Although the system administrator may maintain multiple fields of information on a user post installation, *the primary field needed for targeted delivery of applets is a zip code.*

*Id.* at col. 9 ll. 38–51 (emphasis added). Further, as in *Profectus*, in every pertinent embodiment disclosed in the specification, applets are served based on geotargeted specifications. *See, e.g.*, '762 patent col. 5 ll. 49–50; col. 5 l. 65–col. 6 l. 3; col. 7 ll. 24–43; col. 9, ll. 6–55; col. 10 ll. 40–42; col. 11 ll. 7–50; Fig. 11. Groove Digital's cites to col. 6, ll. 38–62 and Fig. 2 of the patent are unavailing because this discussion in the specification pertains to selection and deployment of an offer presented through an applet, not applet delivery.[5]

---

[5] We do not find Groove Digital's reference to the Board's construction to be persuasive. As United Bank points out, the *Phillips* standard differs from the broadest reasonable interpretation standard applied in inter partes review proceedings. These different standards can result in different constructions. *See PPC Broadband, Inc. v.*

Accordingly, the district court did not err when it construed the "applet" term and the "comparing" phrases to require geotargeting.

## III.

### A.

Groove Digital's second argument is that the district court erred when it construed the term "internet browser." According to Groove Digital, the specification of the '762 patent only requires that the internet browser be the component of the applet that sends and receives information for display to the user and does not require the functions of "enabl[ing a user] to find, locate, retrieve, and navigate any web pages on the internet," as required by the court's construction. Appellant's Br. 20–23. In support of its argument, Groove Digital relies on the specification at col. 3, ll. 11–12, which states that the browser is "[t]he location in the applet where the content is located," and at col. 10, ll. 53–55, which states that the internet browser is where content "can be viewed." Additionally, Groove Digital cites to extrinsic evidence in the form of (1) a Microsoft Computer Dictionary (5th ed. 2002) definition of "web browser" to mean "[s]oftware that lets a user view HTML documents and access files and software related to those documents," J.A. 69; and (2) a Modern Dictionary of Electronics (7th ed. 1999) definition of "browser" as "[a]n application used to view information from the internet." J.A. 63.

United Bank responds by pointing out that the specification does not use the term "internet browser" but does provide two examples of "[]web browser[s]," which both

---

*Corning Optical Commc'ns RF, LLC*, 815 F.3d 734, 742–43 (Fed. Cir. 2016)); *Google Inc. v. Network-1 Techs., Inc.*, 726 Fed. App'x 779, 784–85 (Fed. Cir. 2018).

parties have recognized describe an internet browser. Specifically, the specification states:

> The location in the applet where the content is located may be a mini-web browser, such as, for example, Microsoft Internet Explorer or Netscape Navigator.

'762 patent col. 3 ll. 11–13. United Bank contends that Microsoft Internet Explorer or Netscape Navigator would have been understood by one of skill in the art as programs that enable users to find, locate, retrieve, and navigate web pages on the internet. Appellee's Br. 37–38. United Bank also points to multiple dictionary definitions it provided to the district court in support of its claim construction. Appellee's Br. 40–43 (citing Compact American Dictionary of Computer Words (1998), J.A. 221–23 (the "Compact Dictionary"); Webster's New World Computer Dictionary (10th ed. 2003), J.A. 225–227 (the "Webster's Dictionary"); Newton's Telecom Dictionary (18th ed. 2002), J.A. 229–31 (the "Newton's Dictionary")). United Bank argues that these dictionary definitions, as well as the dictionary definitions Groove Digital provided, support the district court's construction of the term "internet browser."

As noted, the district court did not set forth its analysis in the *Claim Construction Order*, so we have no subsidiary fact findings to review for clear error. However, even reviewing the district court's construction de novo, we do not believe the court erred.

As noted, the specification provides limited guidance on the claim terms at issue, but the guidance it does provide supports the district court's construction. Significantly, Groove Digital does not dispute that both examples of "browsers" provided in the specification—Microsoft Internet Explorer and Netscape Navigator—can "enable a user to find, locate, retrieve, and navigate any web pages on the internet." Reply Br. 7.

We also read the dictionary definitions provided by the parties to support the court's construction.  The Compact Dictionary defines "browser" as "[a] program, such as Netscape Navigator or Internet Explorer, that allows you to *find and access documents from anywhere on the Internet.*"  J.A. 223 (emphasis added).  The Webster's Dictionary defines "browser" as "[a] program that enables the user to *navigate* the World Wide Web (WWW)" and includes Netscape Navigator and Microsoft Internet Explorer as two examples.  J.A. 227.  The Newton's Dictionary defines "web browser" as "software which allows a computer user . . . to '*surf' the World Wide Web.  It lets us *select, retrieve and interact with resources on the web.*  It lets us move easily from one World Wide Web site to another."  J.A. 231 (emphases added).  The Modern Dictionary of Electronics, cited by Groove Digital, defines "browser" both as (1) "[a] software application that permits *viewing* and *possibly searching* of content in an information database" and (2) as "[a]n application used to *view* information from the Internet."  J.A. 63 (emphases added).  The Modern Dictionary of Electronics also states that "[b]rowsers provide a user-friendly interface for *navigating through and accessing the vast amount of information on the Internet.*"  *Id.* (emphasis added).  In our view, these definitions well support the court's construction of "internet browser" to enable a user to find, locate, retrieve, and navigate any web pages on the Internet.  At a minimum, these definitions illustrate that Groove Digital's proposed claim construction ("a program capable of interacting with servers over the Internet to send and receive information," Appellant's Br. 20) is overly broad.  In sum, we do not believe the district court's claim construction of the term "internet browser" was in error.

## CONCLUSION

For the foregoing reasons, we affirm the district court's construction of the term "applet," the "comparing" phrases, and the term "internet browser."  We therefore *affirm* the district court's grant of summary judgment of non-

infringement as to claims 1–37 of the '762 patent and the resulting judgment in favor of United Bank.

**AFFIRMED**

COSTS

No costs.